```
 1                     UNITED STATES DISTRICT COURT

 2                 EASTERN DISTRICT OF NEW YORK (BROOKLYN)

 3      UNITED STATES OF AMERICA,
                                          Case No. 1:23-cr-00429-NGG-2
 4                    Plaintiff,

 5      v.                                Brooklyn, New York
                                          November 1, 2023
 6      NIKOLAY GRIGOREV,                 3:42 p.m.

 7                    Defendant.

 8

 9          TRANSCRIPT OF INITIAL APPEARANCE AND ARRAIGNMENT HEARING
                    BEFORE THE HONORABLE LOIS BLOOM
10                  UNITED STATES MAGISTRATE JUDGE

        APPEARANCES:
11      For the Plaintiff:               Artie McConnell, Esq.
                                         Kate Mathews, Esq.
12                                       U.S. Attorney's Office
                                         271-A Cadman Plaza East
13                                       Brooklyn, NY 11201

14      For the Defendant:               Mia Eisner-Grynberg, Esq.
                                         Federal Defenders of New York
15                                       One Pierrepont Plaza
                                         16th Floor
16                                       Brooklyn, NY 11201

17      Also Appearing:                  Robert Long, Pre-trial Services
                                         Ms. Marina Grigorev, Mother
18                                       Mr. Nikolay Grigorev, Father

19      Clerk:                           TLH

20      Court Recorder:                  Electronic Sound Recording

21      Transcription Service:           Chris Hwang
                                         Abba Reporting
22                                       PO Box 223282
                                         Chantilly, Virginia  20153
23                                       (518) 302-6772

24
        Proceedings recorded by electronic sound recording;
25      transcript produced by transcription service.
```

1              (Call to order at 3:42 p.m.)

2              THE CLERK:  -- for arraignment, case number 23-CR-429

3    United States v. Nikolay Grigorev.  Counsel, starting with the

4    Government, state your appearances?

5              MR. MCCONNELL:  Your Honor, good afternoon, Artie

6    McConnell and Kate Mathews for the United States.

7              MS. EISNER-GRYNBERG:  Good afternoon, Federal

8    Defenders by Mia Eisner-Grynberg for Nikolay Grigorev, who's to

9    my right.

10             THE COURT:  Good afternoon, Mr. Grigorev.  The

11   purpose of today's proceeding is to make sure that you

12   understand the nature of the charges being made against you by

13   the United States of America and to make sure that you

14   understand that you have certain constitutional rights.

15             First, you have the right to be represented by

16   counsel at today's proceeding and in all future proceedings

17   before this Court.  And if you're unable to afford counsel, the

18   Court will appoint counsel to represent you.

19             Now I've been presented with a financial affidavit

20   that shows that you have rental income at a fairly high level.

21             But I assume, Ms. Eisner-Grynberg, that you've

22   reviewed the financial affidavit and that you're still able to

23   represent Mr. Grigorev?

24             MS. EISNER-GRYNBERG:  Yes, Judge.  So --

25             THE COURT:  Stand to address the Court?

1          MS. EISNER-GRYNBERG:  Sorry.

2          THE COURT:  Thank you.

3          MS. EISNER-GRYNBERG:  So, Judge, I think that Mr.

4  Grigorev's financial situation as presented to you demonstrates

5  that he does have moderate rental income and salary.  He other

6  -- also has significant expenses.

7          So it seems that most of his assets are in the form

8  of the residence that he lives in, as well as the rental

9  property from which he derives the rental income.  So I think

10  given that outlook, we would be able to represent --

11          THE COURT:  I just wanted to make sure that you've

12  reviewed it --

13          MS. EISNER-GRYNBERG:  -- if the Court -- yes.

14          THE COURT:  -- because if Federal Defenders is

15  satisfied that he meets your requirements, then I am not going

16  to stand in the way.

17          And I will say so, Mr. Grigorev, you have the right

18  to be represented by counsel at today's proceeding and at all

19  future proceedings before the Court.

20          And if you're unable to afford counsel, the Court

21  will appoint counsel to represent you, which is why I started

22  with the financial affidavit.

23          So the Court finds that based on the financial

24  affidavit and Ms. Eisner-Grynberg's representations to the

25  Court, that you would be unable to afford counsel and the Court

1    appoints the Federal Defenders of New York to represent you in

2    today's proceeding and all future proceedings arising out of

3    these charges before this Court.

4             And I just want to say something to you, Mr.

5    Grigorev, because I have reviewed your Pre-Trial Services

6    Report.  So I see that you've never had prior contact with the

7    criminal justice system.

8             I want you to know that the Federal Defenders are

9    some of the best attorneys we see in this Court.  This is what

10   they do every day.

11            Ms. Eisner-Grynberg, how many years have you been a

12   Federal Defender now?

13            MS. EISNER-GRYNBERG:  Nine.

14            THE COURT:  And how many trials have you had in this

15   Court?

16            MS. EISNER-GRYNBERG:  Many.

17            THE COURT:  How many?

18            MS. EISNER-GRYNBERG:  I don't know.

19            THE COURT:  Over nine.

20            MS. EISNER-GRYNBERG:  Something like that.

21            THE COURT:  Over 20.

22            MS. EISNER-GRYNBERG:  No.

23            THE COURT:  Okay.

24            MS. EISNER-GRYNBERG:  Not in this courthouse.

25            THE COURT:  No?

1          MS. EISNER-GRYNBERG:  Not in this courthouse, no,

2   Judge.

3          THE COURT:  Okay, but you worked in other courthouses

4   where you also tried cases?

5          MS. EISNER-GRYNBERG:  Yes, I did.

6          THE COURT:  Thank you.  Just to give Mr. Grigorev

7   some sense and to give his family some sense.

8          So, again, they know what they're talking about.

9   They're not here just to be a placeholder.  They're zealous

10   advocates for their clients.

11          You have the right to remain silent.  If you've

12   started to make a statement, you may stop.  Any statement that

13   you make to anyone other than your attorneys can be used

14   against you.  Do you understand that you have the right to

15   counsel and the right to remain silent?

16          THE DEFENDANT:  I do.

17          THE COURT:  Can you make sure his mic is on?

18          THE DEFENDANT:  I do.

19          THE COURT:  Thank you.  Have you had the opportunity,

20   Mr. Grigorev, to review the indictment that's been handed down

21   by the grand jury against you in this matter?

22          THE DEFENDANT:  Yes, I had the opportunity.

23          THE COURT:  And do you understand the charges that

24   are being made against you?

25          THE DEFENDANT:  I do understand.

1          THE COURT:  Yes.  And Ms. Eisner-Grynberg, have you

2   had the opportunity to review the indictment with your client?

3          MS. EISNER-GRYNBERG:  Yes, I have.  Yes, I have and

4   we enter a plea of not guilty.

5          THE COURT:  And do you waive a public reading or do

6   you wish me to read the indictment aloud?

7          MS. EISNER-GRYNBERG:  We waive a public reading.

8          THE COURT:  Okay.  And a plea of not guilty shall be

9   entered on behalf of Mr. Grigorev to all counts pertaining to

10  him.

11         MS. EISNER-GRYNBERG:  Judge, I'm sorry, just to go

12  back on the financial eligibility, this is my first look at his

13  eligibility, but I will discuss the real estate situation with

14  my supervisors.  And if something changes, I'll contact the

15  Court, but for now, we're happy to accept him the assignment.

16         THE COURT:  Well, again, first talk to Mr. Grigorev,

17  because again, he has presented that he does have a home and

18  two properties, three vehicles.  That's not your usual

19  demographic let's say.

20         MS. EISNER-GRYNBERG:  Right.

21         THE COURT:  That being said, he does list that he has

22  47- to $48,000 in credit card debt.  And I'm sure he doesn't

23  own the properties outright, Mr. Grigorev.

24         MS. EISNER-GRYNBERG:  That's correct.

25         THE COURT:  Okay.  So you talk to your supervisor.

1    If you need to raise it, you can raise it, but talk to your

2    client first.

3              MS. EISNER-GRYNBERG:  I will, thank you.

4              THE COURT:  Mr. McConnell, pursuant to criminal rule

5    -- pursuant to Federal Rule of Criminal Procedure 5(f), I

6    remind the Prosecution of its obligation under Brady v.

7    Maryland and its progeny to disclose to the Defense all

8    information whether admissible or not that's favorable to the

9    Defendant, material either guilt or to punishment and known to

10   the Prosecution.

11             The Prosecution must make good faith efforts to

12   disclose such information to the Defense as soon as reasonably

13   possible.  And I will enter a written order more fully

14   describing this obligation and the possible consequences of

15   failing to meet it.

16             I direct the Prosecution to review and comply with

17   that order.  Does the Prosecution confirm that it understands

18   its obligations and will fulfill them?

19             MR. MCCONNELL:  Yes, we do.

20             THE COURT:  Thank you.

21             So I have been presented with an order setting

22   conditions of Mr. Grigorev's release and appearance on bond.

23   And I believe that this had been worked out between you, Mr.

24   McConnell and you, Ms. Eisner-Grynberg; is that correct?

25             MR. MCCONNELL:  Yes.

1          MS. EISNER-GRYNBERG:  That's correct.

2          THE COURT:  Okay, and I did get an email, which was

3    sort of an addendum to the Pre-Trial Services Report, saying

4    that they didn't believe that electronic monitoring was

5    necessary in this case.  This was Mr. Olaria (phonetic) sent it

6    directly to me.

7          MR. LONG:  I'm sorry, Your Honor, I wasn't cc'd on

8    that, but as indicated --

9          THE COURT:  Can you state for the record who's

10   speaking?  Thank you.

11         MR. LONG:  Robert Long, Pre-trial Services.

12         THE COURT:  Thank you.  Nice to see you Mr. Long.  Go

13   ahead.

14         MR. LONG:  As indicated (indiscernible), that was not

15   a condition that we recommended.  I wasn't aware of the --

16         THE COURT:  So what does standalone monitoring mean?

17   I don't even know what that means?

18         MR. LONG:  Of course, Your Honor.  So, ideally, the

19   Defendant would be placed on a monitor.  And other than his

20   travel location, he'd be free to come and go as -- so there

21   wouldn't be any restrictions, times, other than domestic

22   travel.

23         THE COURT:  So Mr. Olaria wrote to me that you did

24   not think this was necessary in the Pre-Trial Services Report.

25   And so I'm just going to ask Mr. McConnell, because I'm sure

1    you don't care if we remove a condition, Ms. Eisner-Grynberg?

2          MS. EISNER-GRYNBERG:  It's up to the Court.  This is

3    what we had previously contemplated so --

4          THE COURT:  So why, Mr. McConnell, do you think it's

5    necessary for him to have?  It says no residential

6    restrictions, but it's a GPS following him.

7          MR. MCCONNELL:  We do think it's appropriate in this

8    case.  And this is -- there are some circumstances that we

9    outline in our detention memo, which I think makes this a

10   somewhat unique situation, given the seriousness of the conduct

11   and the strength of the evidence and the potential sentence the

12   Defendant is facing, which in --

13         THE COURT:  Except he is a citizen here.  His mother

14   and his parents are here and his family is here, so it's unlike

15   other cases where, you know, you have concern about their

16   travel.  Why should we be watching where he's going?

17         MR. MCCONNELL:  Because I think now that the reality

18   of not only arrest, but indictment has set in, I think that

19   does change things for the Defendant as far as incentive to

20   flee.

21         Additionally, the bond amount of 250,000 that we

22   recommended was predicated on the idea that electronic

23   monitoring would also be imposed.

24         The Government would ask for a higher amount if

25   electronic monitoring were to be removed as a restriction.

1          I've also had conversations with Defense counsel and

2   made it clear that I don't believe that this is a condition

3   that needs to remain in perpetuity.  I think I would be like to

4   see a period of time where the Defendant is monitored, how he

5   is complying with the other conditions that are in place.

6          Because this is a serious case, there are concerns

7   that the Defendant by virtue of the offense conduct has access

8   to individuals and resources overseas that he could leverage

9   and --

10          THE COURT:  That may be true, but citizenship is

11   something that would be hard to give up, especially when his

12   family is all here.

13          I do understand what you're saying.  I'm not going to

14   interfere, but I do take what Pre-Trial reports to me quite

15   seriously that not everybody needs to be monitored.  It is a

16   resource and a burden.

17          And, again, I'm okay for the purpose of allowing him

18   to be released today and everything to get settled.  And then,

19   you've been given a reason in the next month or so to re-visit

20   it if everything is going well and Pre-Trial does not believe

21   that there's any reason why he needs to be monitored, okay?

22          MR. MCCONNELL:  And, Your Honor, that was something

23   that the Government suggested.  I fully intend on abiding by

24   that representation, assuming that there's no other issues

25   during the period between now and the next status conference.

1            THE COURT:  Thank you.

2            MS. EISNER-GRYNBERG:  Judge, I certainly will hold

3   Mr. McConnell to that.  And I have every expectation that Mr.

4   Grigorev will comply fully and the -- it will be a very time

5   limited period.

6            THE COURT:  Can I please ask for Ms. Hillo to come

7   forward, who is coming to sign this bond?  Oh, she's signing by

8   11/3?

9            MS. EISNER-GRYNBERG:  So Ms. Hillo is Mr. Grigorev's

10  wife.  She's at work right now and wasn't able to get out of

11  work immediately.  This -- Mr. Grigorev came fairly late in the

12  day.

13           His parents are here today and his wife is able to

14  come tomorrow morning at 11 a.m. so.

15           THE COURT:  And you're allowing him to be released

16  without anybody to sign?

17           MR. MCCONNELL:  Well, his parents are here, Judge.

18  And again, for the reasons that Your Honor stated, his

19  citizenship, the length of time that he has been here.  I'll

20  also point out that the Defendant has been aware not only of

21  the investigation, but his potential exposure in this case

22  since June of 2023.

23           So, with location monitoring and the fact that he

24  does have family in Court today and with Defense counsel's

25  representation and the expectation that she will come in here

1    in a relatively brief period of time, I do feel comfortable.

2             THE COURT:  And why wouldn't we take his mother and

3    father on the bond today?

4             MR. MCCONNELL:  So my understanding is that they are

5    not working and they may not have sort of the ability to secure

6    the amount.

7             THE COURT:  I'm not saying not to take Ms. Hillo's

8    signature by 11/3.  I'm saying we have the two family members

9    in Court --

10            MR. MCCONNELL:  So --

11            THE COURT:  -- and for the purposes of allowing him

12   to be released today, his parents are here.  I assume they're

13   willing to sign a bond for their son.

14            They may not have a large income, but as far as moral

15   suasion, I would imagine that they are people that Mr. Grigorev

16   does not want to disappoint.  And so, I would suggest that we

17   call up his parents and have them sign the bond today.

18            MR. MCCONNELL:  Yes.

19            THE COURT:  Okay.  So, Mr. and Mrs. Grigorev, if you

20   could come right to this --

21            MS. EISNER-GRYNBERG:  May I just have one moment with

22   them just to --

23            THE COURT:  Certainly.

24        (Counsel confers with Mr. and Mrs. Grigorev)

25            THE COURT:  Wait, wait, wait, are you calling them

1    up, Ms. Eisner-Grynberg?

2              MS. EISNER-GRYNBERG:  Yeah.

3              THE COURT:  So both of you?

4              MS. EISNER-GRYNBERG:  So the concern -- they are both

5    willing to sign.  And I guess I'm wondering if once his wife

6    signs tomorrow, we might be able to remove them from the bond?

7    What his mother is telling me is she's in the midst of cancer

8    treatment.

9              THE COURT:  I'm so sorry, ma'am.

10             MS. EISNER-GRYNBERG:  And is concerned --

11             THE COURT:  I'm glad that you're getting treatment.

12   You look good.  I wouldn't have known that you had no hair, so.

13             MS. EISNER-GRYNBERG:  Just concerned about having any

14   financial obligation.

15             THE COURT:  Continuing obligations?  Well, I have no

16   opposition to them signing tonight and being removed.  I'm not

17   on tomorrow, but we'll leave word that if Ms. Hillo comes to

18   sign, if it's tomorrow, we can with consent of the Government

19   remove the parents.

20             MS. EISNER-GRYNBERG:  That's fine.

21             THE COURT:  I'm doing this because in the interim,

22   there shouldn't be no one to sign for him.  $250,000 is a big

23   bond, but again, I am taking Mr. Grigorev at his word that his

24   wife will come to sign tomorrow.

25             And before then, I will take his parents.  And then,

1    we will take you off the bond when his wife comes.

2             MS. EISNER-GRYNBERG:  One question?

3             THE COURT:  Yeah, certainly.  Go ahead.

4         (Counsel confers with Mr. and Mrs. Grigorev)

5             THE COURT:  Anything else you want to tell me?

6             MS. EISNER-GRYNBERG:  She is just wanting to

7    re-assure you that she trusts the word of her son and she fully

8    expects that he will do what he's supposed to do.

9             THE COURT:  I believe that you believe that, but I

10   still have to go over everything that's in the bond, okay?  So

11   I'm going to ask my deputy to swear you to the truth of your

12   testimony.  And then, we'll move on.  Go ahead.

13            THE CLERK:  Please raise your right hand.

14        (Mr. and Mrs. Grigorev are sworn)

15            THE CLERK:  Okay, please state your name for the

16   record and speak loudly to be recorded, your name?

17            MS. GRIGOREV:  My name is Marina.

18            THE CLERK:  Thank you.

19            MR. N. GRIGOREV, SR.:  My name is Nikolay.

20            THE CLERK:  Thank you.

21            THE COURT:  Mr. and Mrs. Grigorev, I'm sorry for the

22   circumstances that bring you to the courthouse today.  As you

23   have been made aware, your son is being charged with a serious

24   federal crime.

25            And that in order for him to be released, pending his

1   trial on these charges, his wife will come to sign this bond

2   tomorrow, but you're here today.

3            So I'm taking your signatures to make sure that

4   between today and when his wife comes, that somebody who is

5   responsible, yes, who believes that he will come back and will

6   make sure that he comes back to face these charges.

7            So, let me go over this, which Mr. Grigorev is as

8   much for you as for your parents.  This is the conditions of

9   your release.  It's a $250,000 bond, which you don't have to go

10  to a bondsman.  It will be signed by you and your wife.  And

11  today, it will be signed by your parents.  You must appear in

12  Court as required and surrender as directed for service of any

13  sentence imposed.

14           You must not commit a federal, state, or local crime

15  while on release.  You must cooperate in the collection of your

16  DNA sample if authorized by law.  And you must advise the Court

17  in writing before making any change in residence or telephone

18  number.

19           You must not possess a firearm, destructive device,

20  or other dangerous weapon.  You must not use or unlawfully

21  possess a narcotic drug or other controlled substance unless

22  it's prescribed by a licensed medical provider.  And marijuana

23  is still prohibited under federal law.  Do you understand all

24  of those terms and conditions so far?

25           THE DEFENDANT:  Yes, I do.

1          THE COURT:  You could stay seated.

2          THE DEFENDANT:  Okay.

3          THE COURT:  And do you understand everything that

4   I've just read, Mr. and Mrs. Grigorev?

5          MS. GRIGOREV:  Yeah.

6          THE COURT:  You're okay, Mr. Grigorev?

7          MR. N. GRIGOREV, SR.:  Yes.

8          THE COURT:  Okay.  And you must submit to Pre-trial

9   supervision and report to Pre-Trial Services as directed.

10  Pre-trial is an arm of the Court.  They're not a separate law

11  enforcement.  They're making sure that you're living up your

12  obligations to the Court as set forth in the order.

13          And they may come to your home or to your employment

14  to randomly visit you to verify that you are complying with the

15  order.  Do you understand?

16          THE DEFENDANT:  I do.

17          THE COURT:  And that you will surrender any passport

18  you have.  Do you have a passport?

19          MS. EISNER-GRYNBERG:  So I have in my hand his United

20  States and Russian passports, which I'm surrendering to

21  Pre-Trial Services.

22          THE COURT:  And you'll get a receipt for them and you

23  may not apply for any other passport while this case is

24  pending.  Do you understand?

25          THE DEFENDANT:  I do.

1        THE COURT:  Okay.  So I'm going to write has been

2    done.  And you are restricted to travel in New York City and

3    Long Island.  Is there a reason why you need to go beyond New

4    York City and Long Island?

5        MS. EISNER-GRYNBERG:  So Mr. Grigorev has informed me

6    that as part of driving an Uber, he sometimes is taken to New

7    Jersey or Connecticut.  Is it possible to add those states just

8    for the purpose of employment?

9        THE COURT:  I have no problem with that.  So I'm

10   going to write New York State.  How about I just write

11   Metropolitan area because Connecticut?  So I'm going to write

12   just to be sure, New York, New Jersey, and Connecticut for

13   employment.

14       MS. EISNER-GRYNBERG:  Thank you, Judge.

15       THE COURT:  And you may not have any contact with any

16   of your co-defendants, except in the presence of counsel.  And

17   let me make this clear to you.  You will be under a microscope

18   while you are out on bail.

19       So, if they show up at your door, you don't open the

20   door.  If they call you on the phone, you hang up, okay?

21       THE DEFENDANT:  Understood.

22       THE COURT:  So unless you're with your lawyer and

23   meeting with the other people with lawyers, you do not have any

24   contact with them.

25       You are subject to the standalone monitoring.

1    However, as we discussed, that may not be for a very long time,

2    but they will put a monitor on you today when you leave.  Is

3    that correct, Mr. Long, that there is still an ankle monitor

4    for a standalone monitoring?

5              MR. LONG:  Yes, Your Honor.

6              THE COURT:  So they'll fit you with that before you

7    leave today.

8              It says that he'll pay the cost of monitoring, but if

9    he's Federal Defenders, he should not be paying the cost.

10             MR. LONG:  That's standard practice.

11             THE COURT:  That he pays the cost no matter what?

12             MR. LONG:  No, no, no, as you were stated, Your

13   Honor.

14             THE COURT:  If he's Federal, but they checked the

15   box, so I'm going to uncheck the box, okay?  And I will

16   indicate that that was me crossing it out.

17             So, Mr. and Mrs. Grigorev, you are just signing today

18   until Ms. Hillo comes, but I do want you to understand that if

19   you sign and for any reason overnight he tries to disappear,

20   that they will come after you for the full amount of this bond,

21   which is $250,000.

22             And they could go after any bank account you have.

23   He would make it impossible for you to dig out of the hole.

24   This is a quarter of a million dollars that you would owe to

25   the United States.

1        And again, even though it's only going to be until

2   his wife comes, I need to make sure that you're signing this

3   with your eyes open.

4        Do you understand the conditions I've put on the

5   record, Ms. Grigorev?

6             MS. GRIGOREV:  Yeah, understood.

7             THE COURT:  And Mr. Grigorev?

8             MR. N. GRIGOREV, SR.:  Yes, I understand.

9             THE COURT:  And do you want to sign this bond?

10             MS. GRIGOREV:  Yeah.

11             MR. N. GRIGOREV, SR.:  Yeah.

12             THE COURT:  Okay.  You're going to need to write in

13   their names, okay?  Thank you.

14        While your parents are signing, I'm going to go over

15   the bail warnings, which I'm required under law to give you.

16   If you don't come back when you're directed to come back, there

17   will be agents sent to find you.  They will find you.  You'll

18   be brought back and the likelihood is you will not be released

19   again pending your trial in this matter.

20        In addition, there's a separate federal charge called

21   bail jumping.  If you don't come back to Court when you're

22   directed to come back to Court and the agents have to bring you

23   back, in addition to ruining your wife or your parent's life

24   financially, you could be charged with bail jumping, which is

25   punishable by up to 10 years in prison.  Even if you are never

1  convicted of the crime for which you are indicted today, you

2  can be convicted of bail jumping.

3         Last but not least, if you commit any other crime

4  while you're out on bail, they can enhance the penalty for the

5  crime you commit.

6         If you commit a felony in New York while out on bail,

7  they could add 10 years to the sentence because you committed

8  the crime while out on bail.  Do you understand those bail

9  warnings?

10         THE DEFENDANT:  I do.

11         THE COURT:  And will you come back to Court whenever

12  you're directed to do so?

13         THE DEFENDANT:  Of course.

14         THE COURT:  Mr. and Mrs. Grigorev, thank you.  You

15  can be seated.  Thank you very much.  Thank you.

16         Thank you very much.

17         So I've been presented with an application to exclude

18  the time between today and November 22nd from the computation

19  of the speedy trial time period.

20         Can I ask, Mr. McConnell, can you put on the record

21  the basis for the application?

22         MR. MCCONNELL:  Yes, Your Honor.  The Government

23  believes it's in the interest of the justice to exclude time.

24  We're going to be producing discovery.  Counsel also needs to

25  confer about a possible pre-trial resolution of the matter.

1   For those reasons, we would move for an exclusion of time.

2           THE COURT:  And I'm sorry, did you say that the 11/22

3   date is the date that Judge Garaufis has scheduled for the

4   conference in this matter?

5           MR. MCCONNELL:  It is, yes.

6           THE COURT:  And what time is that conference?

7           MR. MCCONNELL:  10 a.m.

8           THE COURT:  10 a.m.  And do you concur with what has

9   been put on the record as the basis for the application?

10          MS. EISNER-GRYNBERG:  Yes, and I've discussed it with

11  Mr. Grigorev.  And we agree that his interests in reviewing

12  discovery and beginning plea negotiations outweigh the right to

13  a speedy trial at this time.

14          THE COURT:  Thank you.  I need to still go over it

15  with you, Mr. Grigorev.  First, did you review this form with

16  your attorney?

17          THE DEFENDANT:  Yes, I read it over.

18          THE COURT:  And is it your signature on this form?

19          THE DEFENDANT:  It is.

20          THE COURT:  So let me just explain to you that the

21  Government has 70 days from the date you're arraigned on the

22  indictment, which is what happened when we entered your not

23  guilty plea at the beginning of this proceeding.  They have 70

24  days to commence the trial against you under the Speedy Trial

25  Act.

1          If they do not commence the trial within 70 days,

2   your attorney can come into Court and ask that the charges

3   against you be dismissed.

4          This application is stopping that 70-day speedy trial

5   clock today and will not start the clock to run again until

6   your next appearance before the Honorable Nicholas Garaufis,

7   who's the district judge assigned to try this case on November

8   22nd, 2023.  Do you understand the application?

9          THE DEFENDANT:  I do.

10          THE COURT:  And have you discussed the application

11   and its consequences with your attorney?

12          THE DEFENDANT:  I have.

13          THE COURT:  And do you have any questions for the

14   Court regarding the application?

15          THE DEFENDANT:  Not at the moment, no.

16          THE COURT:  Then because the parties have represented

17   that they are intending to talk about plea negotiations and

18   exchange discovery and that they need to focus their efforts on

19   these matters and they believe that they would not have

20   requisite and reasonable time to effectively prepare the case

21   without the exclusion -- o

22          Oh, I forgot to ask, I'm sorry, did you ask Judge

23   Garaufis if you can make the application to my attention?

24          MR. MCCONNELL:  Yes, I did.

25          THE COURT:  Thank you.

1    I find that the exclusion between today and November

2    22nd serves the ends of justice and outweighs the interest of

3    the public and the Defendant in a speedy trial for the reasons

4    stated on the record.

5    I'm making note on the record that Mr. Grigorev's

6    parents signed today basically as a placeholder until his wife

7    appears, whether it's tomorrow or it's on Friday, at which

8    point the Court would remove the parents with the consent of

9    the Government and consent of the Defendant.  And the only

10   suretor on the bond will be Alina Hillo, Mr. Grigorev's wife.

11   Correct, Mr. McConnell?

12   MR. MCCONNELL:  Yes.

13   THE COURT:  Was there anything else that needed to be

14   addressed on behalf of the United States today with respect to

15   Mr. Grigorev?

16   MR. MCCONNELL:  No.

17   THE COURT:  Is there anything further that needs to

18   be addressed on behalf of Mr. Grigorev?

19   MS. EISNER-GRYNBERG:  No, thank you.

20   THE COURT:  Then this matter is adjourned.

21   And Marshals, does he need to go downstairs?  He

22   needs to do Pre-trial though, which is right out the front

23   door.

24   And you'll be fit with a electronic monitor.  And

25   your wife needs to come back either at 11 or at 2 tomorrow or

1    Friday to sign the bond.  Thank you.  This matter's adjourned.

2              MS. EISNER-GRYNBERG:  Thank you, Judge.

3              THE CLERK:  Thank you.

4         (Proceedings concluded at 4:11 p.m.)

1                              **CERTIFICATE**

2

3

4          I, Chris Hwang, court approved transcriber, certify

5     that the foregoing is a correct transcript from the official

6     electronic sound recording of the proceedings in the above-

7     entitled matter.

8

9

10

11

12

13     _____          November 7, 2023

14     Chris Hwang                   Date

15     Court Reporter

16

17

18

19

20

21

22

23

24

25